UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


BRUCE MICHAEL GUILMETTE,

             Petitioner,

v.                                           CASE NO. 05-CV-72646-DT
                                           HONORABLE VICTORIA A. ROBERTS

CAROL HOWES,

             Respondent.

_____/

**OPINION AND ORDER GRANTING THE WRIT OF HABEAS CORPUS**

     Petitioner Bruce Michael Guilmette has filed a *pro se* application for the writ of habeas

corpus pursuant to 28 U.S.C. § 2254. The habeas petition attacks Petitioner's state conviction

for first-degree home invasion. The Court concluded from a review of the pleadings and record

that Petitioner was deprived of effective assistance of counsel by his attorneys' failure to conduct

a thorough investigation of the facts and failure to contest the prosecution's proofs on an element

of the offense. Accordingly, the habeas petition is GRANTED.

**I. Background**

    **A. The Trial**

     Petitioner was charged in Livingston County, Michigan with breaking and entering Don

and Joan McCormick's residence in Howell, Michigan on January 7, 1999. Mrs. McCormick

watched television about noon that day. She saw a man walk in front of her window. The man

rang her front doorbell for a long time and then walked away. She lost sight of him for a few

minutes, but he came back and began ringing the doorbell again. He then banged on the door,

which "came crashing open." Mrs. McCormick screamed and ran toward the kitchen. She tripped and fell, but when she glanced back, nobody was there. She looked out the window and saw the man running off the porch toward a gray Chevy minivan. He ran past the driver's door, came back around, got in the driver's side of the van, and drove away.

Mrs. McCormick identified Petitioner in two photo arrays. At the preliminary examination, she was unable to distinguish between Petitioner and his brother, who was seated nearby, but she thought that one of them was the man who broke into her home. At trial, she testified that Petitioner looked a lot like the man who was at her house.

The prosecution introduced evidence that Petitioner pleaded guilty to home invasion in another case where the *modus operandi* was similar. Other evidence included photographs of two footprints discovered at the McCormicks' home. Michigan State Trooper Jennifer Coulter photographed a footprint that was visible on the snowy walkway leading to the McCormicks' front door. A forensic scientist identified the approximate size of the shoe or boot and the brand of footwear which created the footprint, but the police were unable to find any footwear matching the footprint when they searched Petitioner's home on January 21, 1999.

Mrs. McCormick took a photograph of a different footprint after Trooper Coulter finished investigating the crime scene and left the premises. Her photograph depicted a partial footprint on the threshold of the front door to her home. The prosecution relied solely on that photograph to establish entry into the home.

The defense theory was one of mistaken identity. Petitioner did not testify, but he produced several witnesses. The director of a substance abuse center testified about a computer-generated receipt, which purported to show that Petitioner was present at the center on Seven

Mile Road in Detroit, Michigan at 12:38 p.m. on the day of the home invasion. The director admitted that the computer did not keep accurate time and was running eighteen minutes slow when tested nineteen days after the home invasion. Consequently, the time that Petitioner actually checked into the center could have been eighteen minutes later than the time stamped on his receipt.

Four other defense witnesses (Petitioner's father, brother, former girlfriend, and mechanic) testified about the malfunctioning driver's door on Petitioner's van. The former girlfriend testified that the door was inoperable in January of 1999.

A detective testified on rebuttal that the distance between the McCormicks' residence in Howell and the substance abuse center in Detroit was fifty miles. During a test drive on January 26, 1999, the detective covered the distance in forty-five minutes, using the most direct route and driving 80 to 85 miles per mile on the highway because he thought that a person who was trying to establish an alibi defense would want to arrive at his destination as quickly as possible. The detective's trip was delayed by six minutes due to a road repair crew, which was working on the highway.

On December 9, 1999, a Livingston County circuit court jury found Petitioner guilty, as charged, of first-degree home invasion, MICH. COMP. LAWS § 750.110a(2). The trial court sentenced Petitioner as a habitual offender, fourth offense, to imprisonment for twenty to thirty years.

### B. The Direct Appeal and Post-Conviction Proceedings in State Court

Petitioner appealed his conviction as of right, arguing that (1) the pretrial identification procedures were suggestive and he was entitled to counsel at the second photographic lineup, (2)

the prosecution failed to produce sufficient evidence, (3) the admission of other acts evidence resulted in a miscarriage of justice, (4) the jury instructions were erroneous, and trial counsel was ineffective for failing to object to the instructions, and (5) the trial court erred when it vacated the initial sentence and then sentenced Petitioner to a longer term in prison as a habitual offender. Petitioner asserted in a *pro se* supplemental brief that his trial attorney was ineffective for failing to suppress and object to the photograph of a footprint taken by Mrs. McCormick after investigators left her home. He claimed that the photograph was not corroborated or authenticated and that the prosecutor improperly argued that the photograph was proof of entry into the home. The Michigan Court of Appeals affirmed Petitioner's conviction and sentence in an unpublished *per curiam* opinion. *See People v. Guilmette*, No. 224720 (Mich. Ct. App. Apr. 16, 2002). On December 4, 2002, the Michigan Supreme Court denied leave to appeal. *See People v. Guilmette*, 467 Mich. 910; 655 N.W.2d 556 (2002) (table). Petitioner filed a petition for a writ of certiorari, which the United States Supreme Court denied on May 5, 2003. *See Guilmette v. Michigan*, 538 U.S. 1015 (2003).

On August 5, 2003, Petitioner filed a motion for relief from judgment in which he raised his habeas claims (ineffective assistance of trial and appellate counsel). The trial court denied his motion after concluding that Petitioner's attorneys were not ineffective. Both state appellate courts denied leave to appeal for failure to establish entitlement to relief under Michigan Court Rule 6.508(D). *See People v. Guilmette*, No. 252592 (Mich. Ct. App. Apr. 23, 2004); *People v. Guilmette*, 471 Mich. 947; 690 N.W.2d 108 (2004) (table).

**C. Federal Court Proceedings**

Petitioner filed his *pro se* habeas corpus petition on July 5, 2005. He raised two grounds for relief:

I.      Ineffective Assistance of Counsel - Failure to Investigate, Prepare, and Assert Defenses.

II.     I was denied the effective assistance of appellate counsel by counsel's failure to obtain entire record and raise issues for appeal.

Earlier this year, the Court appointed counsel for Petitioner, who moved to amend the habeas petition to include an additional argument that the pretrial photographic array was unduly suggestive. The Court denied the motion, but accepted Petitioner's supplemental brief in support of his original habeas claims.

## II.  The State's Procedural Default Defense

Respondent argues that Petitioner was not represented by ineffective attorneys and that he procedurally defaulted his claims by not raising the claims on direct review of his conviction. Petitioner replies that his claims are not procedurally defaulted and, even if they were, his appellate attorney was "cause" for the procedural default.

### A.  Legal Framework

A procedural default is "a critical failure to comply with state procedural law . . . ." *Trest v. Cain*, 522 U.S. 87, 89 (1997). "Federal courts must consider four factors when assessing whether a habeas petitioner has procedurally defaulted his claims." *Beuke v. Houk*, __ F.3d __, __, No. 96-3050, 2008 WL 3351168, at *4 (6th Cir. Aug. 13, 2008) (citing *Gonzalez v. Elo*, 233 F.3d 348, 353 (6th Cir. 2000), and *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986)).

First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with

the rule.  Second, the court must decide whether the state courts actually enforced the state procedural sanction.  Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim.

*Id*. (quoting *Jacobs v. Mohr*, 265 F.3d 407, 417 (6th Cir. 2001) (quoting *Maupin*, 785 F.2d at

138)).

"Once the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground," the court must move to the fourth factor.  *Maupin*, 785 F.2d at 138.  The fourth factor allows a petitioner to avoid or excuse procedural default if he demonstrates "that there was cause for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error."  *Id*.  (quotation omitted).

*Id*.

## B.  Application

The state procedural rule in question here is Michigan Court Rule 6.508(D).[1]  Subsection

---

[1]  Rule 6.508(D) reads:

**(D)   Entitlement to Relief.**  The defendant has the burden of establishing entitlement to the relief requested. The court may not grant relief to the defendant if the motion

(1) seeks relief from a judgment of conviction and sentence that still is subject to challenge on appeal pursuant to subchapter 7.200 or subchapter 7.300;

(2) alleges grounds for relief which were decided against the defendant in a prior appeal or proceeding under this subchapter, unless the defendant establishes that a retroactive change in the law has undermined the prior decision;

(3) alleges grounds for relief, other than jurisdictional defects, which could have been raised on appeal from the conviction and sentence or in a prior motion under this subchapter, unless the defendant demonstrates

(a) good cause for failure to raise such grounds on appeal or in the prior motion, and

(b) actual prejudice from the alleged irregularities that support the claim for relief. As used in this subrule, "actual prejudice" means that,

(3) of Rule 6.508(D) prohibits state courts from granting relief from judgment if the defendant alleges nonjurisdictional grounds that could have been raised on appeal from the conviction or sentence. An exception exists when the defendant demonstrates "good cause for failure to raise such grounds on appeal" and "actual prejudice from the alleged irregularities that support the claim for relief." Mich. Ct. R. 6.508(D)(3).

Petitioner violated Rule 6.508(D)(3) by not raising his claim about trial counsel in his appeal of right before the Michigan Court of Appeals.[2] Although he raised a similar claim in his *pro se* supplemental brief on appeal, he styled his claim differently and he argued on the basis of state law that Mrs. McCormick's photograph of the threshold footprint was inadmissible because it was not corroborated by other evidence.

"[A] procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case "'clearly and expressly'" states that its judgment rests on a state procedural bar." *Harris v. Reed*, 489 U.S. 255, 263 (1989) (quoting *Caldwell v. Mississippi,* 472 U.S. 320, 327 (1985) (quoting *Michigan*

---

(i) in a conviction following a trial, but for the alleged error, the defendant would have ad a reasonably likely chance of acquittal;

     . . . .

The court may waive the "good cause" requirement of subrule (D)(3)(a) if it concludes that there is a significant possibility that the defendant is innocent of the crime.

[2] Petitioner's claim about appellate counsel is not procedurally defaulted, because an appellate attorney cannot be expected to complain about his own ineffectiveness on appeal. *Combs v. Coyle*, 205 F.3d 269, 276 (6th Cir. 2000). State collateral review was the first opportunity that Petitioner had to raise his claim about his appellate attorney. *Hicks v. Straub*, 377 F.3d 538, 558 n. 17 (2004).

*v. Long,* 463 U.S. 1032, 1041 (1983)). Courts must "look through" unexplained orders to the last reasoned state court decision when determining whether a judgment rests on a state procedural bar. *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991). If an order appears to rest primarily on federal law, a reviewing court must presume that a subsequent unexplained order did not invoke a procedural default and left the earlier order in place. *Id*. at 803.

Petitioner first raised his claim about trial counsel during state collateral proceedings. The Michigan Court of Appeals and the Michigan Supreme Court denied leave to appeal on the ground that Petitioner failed "to meet the burden of establishing entitlement to relief under [Michigan Court Rule] 6.508(D)." In *Simpson v. Jones,* 238 F.3d 399, 407-08 (6th Cir.2000), and in *Burroughs v. Makowski*, 282 F.3d 410, 413-14 (6th Cir. 2002), the Sixth Circuit held that this language invokes a state procedural rule, which is sufficient to preclude federal habeas review.

The Sixth Circuit was confronted with the same issue in *Abela v. Martin*, 380 F.3d 915 (6th Cir. 2004). There, the lower state courts ruled on the merits of the petitioner's claims, but the Michigan Supreme Court denied leave to appeal for failure to establish entitlement to relief under Rule 6.508(D). The Sixth Circuit concluded that, under the circumstances, *Simpson* and *Burroughs* were inapplicable and the petitioner's claims were not procedurally defaulted. *See id*. at 922-24. In *Ivory v. Jackson*, 509 F.3d 284, 292-93 (6th Cir. 2007), *cert. denied*, __ U.S. __, 128 S. Ct. 1897 (2008), the Sixth Circuit resolved the differences between the Simpson and Burroughs cases and *Abela* by concluding that Ivory's case was more like *Simpson* and *Burroughs* than *Abela* because no state court addressed the merits of Ivory's claims during postconviction proceedings.

The trial court was the last state court to issue a reasoned decision in Petitioner's case. It ruled on the merits of Petitioner's constitutional claims and did not even mention Rule 6.508(D) in its opinion. The Michigan Court of Appeals and the Michigan Supreme Court later rejected Petitioner's claims in standard orders citing Michigan Court Rule 6.508(D) without any reference to a subsection of the rule. Because the trial court made a merits determination on Petitioner's constitutional claim and did not invoke a procedural bar, this Court must presume that the subsequent orders of the Michigan Court of Appeals and the Michigan Supreme Court did not invoke a procedural default and left the trial court's order in place. This case is more like *Abela* than *Simpson* and *Burroughs*. Therefore, Petitioner's claims are not procedurally defaulted. Alternatively, appellate counsel was "cause" for Petitioner's procedural default, and prejudice resulted. *See infra* section IV.A. The Court proceeds to address the merits of Petitioner's claims, using the following standard of review.

## III.  Standard of Review

Petitioner is entitled to the writ of habeas corpus only if he can show that the trial court's adjudication of his claims on the merits–

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially

indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). A state court's decision is an "unreasonable application of" clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413. "[A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Id*. at 410 (emphasis in original). "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id*. at 409.

## IV. Discussion

Petitioner alleges that his attorneys were ineffective for failing to raise certain issues at trial and on appeal. He contends that his trial attorneys should have recognized that two footprints at the crime scene were dissimilar and that the prosecution failed to prove the entry and intent elements of the offense. He alleges that appellate counsel was ineffective for failing to obtain photographs of the footprints and for failing to argue that his trial attorneys were ineffective. The trial court held that neither trial nor appellate counsel's performance fell below an objective standard of reasonableness and therefore Petitioner failed to establish ineffective assistance of counsel.

The Supreme Court's decision in *Strickland v. Washington*, 466 U.S. 668 (1984), "qualifies as 'clearly established Federal law'" for purposes of evaluating ineffective-assistance-of-counsel claims. *Williams v. Taylor*, 529 U.S. at 391. Pursuant to *Strickland*, Petitioner must demonstrate that his attorneys' performances were deficient and that the deficient performances prejudiced the defense. *Strickland*, 466 U.S. at 687.

"[T]he proper standard for attorney performance is that of reasonably effective assistance." *Id*. A petitioner "must show that counsel's representation fell below an objective standard of reasonableness." *Id*. at 688. "Judicial scrutiny of counsel's performance must be highly deferential." *Id*. at 689. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." *Id*. (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).

> A trial lawyer accused of constitutional ineffectiveness for failing to act where action is ordinarily indicated will almost always have a reason for declining to act. The reason will usually be called the lawyer's "strategy." But the noun "strategy" is not an accused lawyer's talisman that necessarily defeats a charge of constitutional ineffectiveness. The strategy, which means "a plan, method, or series of maneuvers or stratagems for obtaining a specific goal or result," Random House Dictionary 1298 (Rev.ed.1975), must be reasonable.

*Cone v. Bell*, 243 F.3d 961, 978 (6th Cir. 2001), *reversed on other grounds*, 535 U.S. 685 (2002).

The prejudice prong of the Strickland test requires showing "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

An appellate attorney need not raise every nonfrivolous argument urged by the appellant if counsel decides as a matter of professional judgment not to raise those arguments. *Evitts v. Lucey*, 469 U.S. 387, 394 (1985); *Jones v. Barnes*, 463 U.S. 745, 751 (1983). When an attorney presents one argument on appeal rather than another, "the petitioner must demonstrate that the issue not presented 'was clearly stronger than issues that counsel did present.'" *Caver v. Straub*, 349 F.3d 340, 348 (6th Cir. 2003) (quoting *Smith v. Robbins*, 528 U.S. 259, 289 (2000)).

"Counsel's failure to raise an issue on appeal is ineffective assistance only if there is a reasonable probability that inclusion of the issue would have changed the result of the appeal." *Howard v. Bouchard*, 405 F.3d 459, 485 (6th Cir. 2005) (citing *Greer v. Michell*, 264 F.3d 663 (6th Cir. 2001)), *cert. denied*, 546 U.S. 1100 (2006).

### A.  Trial Counsel's Failure to Investigate and Contest the Element of Entry; Appellate Counsel's Failure to Raise the Issue on Appeal

State Trooper Jennifer Coulter testified at trial that she went to the crime scene and observed footprints in the snow on the walkway leading to the McCormicks' front door.  She took a photograph of the best footprint she could find.  At trial, she claimed that the photograph depicted the suspect's footprint on the walkway.  She saw no other footprints leading to the front door.

Mrs. McCormick also thought that footprints on the walkway were made by the suspect. She testified that her husband used the garage door, not the front door, on the day in question and that no one else had been on the sidewalk or porch.  After Trooper Coulter and another police officer left the McCormicks' home, Mrs. McCormick photographed a partial footprint on the threshold to her home.  She testified that Trooper Coulter did not make the footprint.  The prosecutor relied solely on Mrs. McCormick's photograph to establish that the suspect entered the house.

Petitioner stated in an affidavit attached to his state appellate court brief that one of his trial attorneys reviewed Mrs. McCormick's photograph of the threshold footprint and advised him not to worry it.  According to Petitioner, the attorney said that the trial court probably would not admit the photograph because it depicted a mere smudge on the floorboard.

Petitioner acquired the photographs of the footprints after his direct appeal came to an

end. He hired an expert witness, who opined that the threshold footprint was significantly different from the footprint found outside the McCormicks' home.

Petitioner claims that his trial attorneys were unaware that the threshold footprint was different from the one taken by the police outside the house. He maintains that if his trial and appellate attorneys had compared the photograph of the threshold footprint to the photograph of the footprint on the walkway, the attorneys would have noticed that the footprints were dissimilar. Because the prosecution claimed that the suspect made the footprint on the walkway, Petitioner argues that evidence of a different footprint on the threshold to the house would have shown that the suspect did not enter the house. Without a showing that the suspect entered the house, the prosecutor would have been unable to establish that a home invasion occurred.[3]

---

[3] The statutory language indicates that entry is an element of the offense:

(2) A person who breaks and enters a dwelling with intent to commit a felony, larceny, or assault in the dwelling, a person who enters a dwelling without permission with intent to commit a felony, larceny, or assault in the dwelling, or a person who breaks and enters a dwelling or enters a dwelling without permission and, at any time while he or she is entering, present in, or exiting the dwelling, commits a felony, larceny, or assault is guilty of home invasion in the first degree if at any time while the person is entering, present in, or exiting the dwelling either of the following circumstances exists:

(a) The person is armed with a dangerous weapon.

(b) Another person is lawfully present in the dwelling.

Mich. Comp. Laws § 750.110a(2):

It is a well established doctrine that "(w)here an entering is a necessary element of the offense, it is sufficient if any part of [the] defendant's body is introduced within the house". 3 Gillespie, Michigan Criminal Law & Procedure (2d ed), § 1133, p. 1528. Thus, if a defendant were to stick his arm through a window, this would constitute an entry. Similarly, if a defendant were to stick his arm through a space between two bars, this would constitute an entry.

Consequently, Petitioner contends that his trial attorneys were ineffective for failing to investigate the photographs and for failing to demonstrate that the prosecution failed to prove entry into the McCormicks' house. Petitioner claims that his appellate attorney was ineffective for not obtaining or reviewing the photographs and for failing to raise a claim about trial counsel's ineffectiveness.

The trial court noted on review of Petitioner's claims that his defense was one of mistaken identity. The court opined that substantial reasons existed for pursuing such a defense and that the alibi and mistaken-identity defense theories would have been undermined in the jurors' eyes if defense counsel argued that the crime did not occur.

Petitioner alleges that the trial court erred in assuming that defense counsel made a strategic decision not to investigate the photographs. He claims that his trial attorneys could not have made a strategic decision to forego using the footprint evidence to his benefit, because the attorneys were unaware of differences in the footprints.

### 1. The Duty to Investigate

The Supreme Court explained in *Strickland* that

> strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

*Strickland*, 466 U.S. at 690-91. Simply stated, attorneys have "a duty to make all reasonable

---

*People v. Gillman*, 66 Mich. App. 419, 429-430; 239 N.W.2d 396, 401 (1976).

efforts to learn what they [can] about the offense." *Rompilla v. Beard*, 545 U.S. 374, 385 (2005).

"In assessing the reasonableness of an attorney's investigation . . . , a court must consider not only the quantum of evidence already known to counsel, but also whether the known evidence would lead a reasonable attorney to investigate further." *Wiggins v. Smith*, 539 U.S. 510, 527 (2003). The question is whether the undiscovered evidence, "taken as a whole, might well have influenced the jury's appraisal of [the defendant's] culpability" and whether "the likelihood of a different result if the evidence had gone in is sufficient to undermine confidence in the outcome actually reached." *Rompilla*, 545 U.S. at 393 (citations and internal quotation marks omitted).

A defense attorney may concede the defendant's commission of a crime even when the defendant does not expressly consent to that course of action. *Florida v. Nixon*, 543 U.S. 175, 178 (2004). However, a habeas petitioner can prevail on a claim of ineffective assistance of counsel if his attorney's concession strategy was unreasonable. *Id*. at 189.

### 2. Conceding the Element of Entry

Petitioner maintains that his trial attorneys made no independent investigation, but simply accepted the prosecutor's assertion that the footprints in question were made by the same person and that the element of entry was proved by the threshold print. Petitioner's attorneys did not concede that Petitioner was the intruder, but they did concede the elements of the offense. Counsel stated in closing arguments:

> This is a case about identification. Not about whether a burglary occurred. And whether a suspect that has been brought in front of you, Mr. Bruce Guilmette is the right person.

(Tr. Dec. 8, 1999, at 35.)

15

"[I]n some cases a trial attorney may find it advantageous to his client's interests to concede certain elements of an offense . . . . in order to persuade the jury to focus on an affirmative defense . . . ." *United States v. Swanson*, 943 F.2d 1070, 1075-76 (9th Cir. 1991). Concessions are appropriate when the evidence against the defendant is overwhelming, *Haynes v. Cain*, 272 F.3d 757, 767-68 (5th Cir. 2001); *United States v. Arnold*, 126 F.3d 82, 89 (2d Cir. 1997), or when "conceding guilt to one count of a multi-count indictment . . . bolster[s] the case for innocence on the remaining counts." *United States v. Holman*, 314 F.3d 837, 840 (2002).

In *Arnold*, for example, the defendant was charged with numerous crimes in connection with his participation in several carjackings. A number of his victims identified him, and an accomplice testified that the defendant helped him commit the crimes. The defendant also confessed to committing three of the carjackings. The Second Circuit concluded that, under the circumstances, conceding an element of the offense did not amount to ineffective assistance of counsel.

This case is distinguishable. There was only one charge, and the evidence was not overwhelming. Mrs. McCormick was the only eyewitness to the crime, and she was unable to identify Petitioner at trial or distinguish him from his brother at the preliminary examination. (Tr. Dec. 8, 1999, at 48.) Although she did identify him in two photo arrays, she admitted at trial that she was not certain whether the defendant was the person she saw on her porch. (*Id*. at 31.)

Conceding the element of entry was an unreasonable tactic. Prosecution witnesses maintained that the footprints on the sidewalk were made by the suspect, but the prosecutor relied on a different type of footprint to establish entry into the house. Although the jury might have

been able to infer from Mrs. McCormick's testimony that the suspect crossed her threshold,[4] the prosecutor never argued that this was evidence of entry into the house. The prosecutor relied on that testimony to establish the "breaking" prong of the "breaking and entering" element. (Tr. Nov. 30, 1999, at 165-66). The prosecutor relied solely on the threshold footprint to establish entry. (Tr. Nov. 30, 1999, at 136 and 178-79; Tr. Dec.8, 1999, at 9.)

Furthermore, defense counsel elicited testimony from Mrs. McCormick that no one else was present after the door came open, she tripped and fell, and looked back. She testified that her "first reaction was to look to see if he was in the house. And then at that point [she] looked and that's when [she] saw him running off the porch." (Tr. Dec. 1, 1999, at 14-15.) Without the threshold footprint, the evidence as a whole suggests that the suspect did not enter the house. Even the Michigan Court of Appeals relied on the threshold footprint to find entry.

The fact that photographs of the footprints were admitted in evidence and given to the jurors is not dispositive of the issue. The jurors could not be expected to compare the photographs, determine that the person who stepped on the threshold to the house was not the suspect who made the footprints on the sidewalk, and then conclude that the prosecution failed to prove that an entry occurred.

The Court therefore finds that defense counsel's investigation was less than adequate and that counsel made an unreasonable decision as to whether further investigation of the footprint evidence was necessary. Counsel also was deficient in conceding the element of entry. The deficient performance was prejudicial because evidence suggesting that the person who made the

---

[4] Mrs. McCormick testified that she made a 911 telephone call to the police after the man came through her door.

threshold footprint was someone other than the suspect could have convinced the jurors that the prosecutor did not prove the element of entry.

### 3. Trial Strategy

The trial court inferred that defense counsel made a strategic decision to concede the elements of the offense in favor of arguing that the prosecution charged the wrong person. The trial court's determination that defense counsel's conduct was a matter of trial strategy is a factual determination which is entitled to deference. *Moore v. Johnson*, 194 F.3d 586, 604 (5th Cir. 1999); *see also* 28 U.S.C. § 2254(e)(1) (a state court's determination of a factual issue is presumed to be correct unless the habeas petitioner rebuts the presumption of correctness by clear and convincing evidence). However, "the adequacy of the pretrial investigation and the reasonableness of a particular strategic or tactical decision is a question of law, entitled to de novo review." *Moore*, 194 F.3d at 604. Courts are "not required to condone unreasonable decisions parading under the umbrella of strategy, or to fabricate tactical decisions on behalf of counsel when it appears on the face of the record that counsel made no strategic decision at all." *Id.*

Defense counsel's decision to concede that a burglary occurred and to focus on identification of the perpetrator likely was a matter of trial strategy. However, the strategy was deficient for a number of reasons. The sole eyewitness to the crime, Mrs. McCormick, was unable to identify Petitioner at trial. The footprint evidence could have been used to discredit her testimony and, at the same time, show that the prosecutor failed to prove an element of the offense. Although the testimony of a victim is sufficient to sustain a conviction, the testimony must be credible. *Tucker v. Palmer*, __ F.3d __, __, No. 07-1408, slip op. at 5 (6th Cir. Sept. 4, 2008). Demonstrating that the two footprints in question were different could have led the jury to

question all aspects of the prosecution's case, including Mrs. McCormick's testimony.

An argument that the prosecution failed to prove entry would not have been inconsistent with the alibi defense. *See, e.g., Radke v. Roe*, 59 Fed. Appx. 923, 924 (9th Cir. 2003) (unpublished decision stating that an alibi defense was not logically inconsistent with the defense that the defendant was merely present after the crime occurred). In fact, defense counsel cross-examined Mrs. McCormick about the questionable value of her photograph of the threshold footprint. Defense counsel elicited testimony that the photograph depicted only a partial footprint, and that Mrs. McCormick took the photograph after the police officers left the scene. He suggested that someone other than the suspect could have left the footprint, and he claimed that it was difficult to determine the direction of the person's footstep. (Tr. Dec. 1, 1999, at 33-34.) Defense counsel also elicited testimony that Mrs. McCormick did not see the suspect when the door crashed open and that, prior to that point in time, she saw him only on the outside of the house. (Tr. Nov. 30, 1999, at 154.) Defense counsel argued to the jury that there was a lack of evidence supporting the charge because the police failed to collect fingerprints from the doorknob to the house and tire tracks on the driveway. (Tr. Dec. 8, 1999, at 40-41.) It would not have been inconsistent with this argument and with defense counsel's cross-examination of Mrs. McCormick to maintain that the prosecutor failed to prove entry into the house.

The defense attorneys' decision to pursue an alibi defense did not excuse their failure to present another defense that would have bolstered Petitioner's defense and not detracted from it. *Foster v. Lockhart*, 9 F.3d 722, 726 (8th Cir. 1993). The attorneys could have done what Petitioner did: obtain an expert witness who opined that the two footprints were significantly different. Even without an expert witness, the attorneys could have cross-examined witnesses

about the differences between the two footprints at the McCormicks' home and argued to the jury

that, because the two footprints were different, the prosecution failed to prove the element of

entry. At a minimum, the attorneys could have used the evidence to bolster the motion for a

directed verdict of acquittal.

While it is true that "an attorney could reasonably choose to avoid confusing the jury with

alternative defenses," *United States v. Smith*, 10 F.3d 724, 729 (10th Cir. 1993), the trial court

stated at a pretrial hearing that "jurors are much more sophisticated than we give them credit for,"

especially in Livingston County. (Tr. Nov. 3, 1999, at 45.) A sophisticated jury surely could

have understood the rationale for using alternative defense theories, particularly where the alibi

defense was undermined by evidence that Petitioner could have committed the crime before

arriving at the substance abuse center.

### 4. Summary

The prosecutor's theory was that Petitioner made the sidewalk footprint and stepped on

the threshold to the McCormicks' home. Given the prosecutor's reliance on the threshold

footprint as the sole evidence of entry, it was unreasonable for defense counsel not to investigate

differences in the sidewalk and threshold footprints and not to argue that the prosecutor failed to

prove entry into the McCormicks' home. To the extent that defense counsel's failure to challenge

the entry element was the result of trial strategy, the strategy was unsound and is not entitled to

deference, because contesting the prosecution's proofs on an element of the offense could have

convinced at least one juror to acquit Petitioner.

Defense counsel's omissions resulted in deficient performances, because the attorneys

violated their obligation to conduct a thorough investigation of potentially favorable evidence.

*Jells v. Mitchell*, __ F.3d __, __, No. 02-3505, 2008 WL 3823058, at *12 (6th Cir. Aug. 18, 2008) (citing *Williams v. Taylor*, 529 U.S. at 397). The deficient performances prejudiced the defense because raising a plausible alternative defense theory supported by some evidence could have raised a reasonable doubt in the jurors' minds and influenced the jurors' appraisal of Petitioner's culpability without imperiling Petitioner's defense. "[T]he most successful criminal attorneys are often those who can create a reasonable doubt in the jurors' minds by throwing up one or two or more plausible alternatives to the defendant's guilt. Individual jurors need not be persuaded by the same plausible alternative to guilt to vote an acquittal." *Moore*, 194 F.3d at 611. The likelihood of a different result if defense counsel had not conceded the element of entry undermines the Court's confidence in the jury's verdict.

Appellate counsel's performance was deficient because he failed to challenge trial counsel's ineffectiveness. The deficient appellate performance prejudiced the defense because a review of the photographs and inclusion of a claim about trial counsel's ineffectiveness could have changed the result of the appeal. The trial court unreasonably concluded that trial and appellate counsel's performances did not fall below an objective standard of reasonableness and did not amount to ineffective assistance.

### B. Trial Counsel's Failure to Challenge the Element of Intent and Appellate Counsel's Failure to Raise the Issue on Appeal

Petitioner's only other claim alleges that his trial attorney was ineffective for failing to challenge the evidence on intent to commit a larceny. Petitioner claims that his trial attorney conceded this element of the offense and failed to hold the prosecution to its proofs. He blames appellate counsel for not raising a claim about trial counsel's ineffectiveness in the appeal of right. The trial court determined that neither attorney was ineffective.

### 1. The Evidence

"Intent to commit a larceny cannot be presumed from proof of the breaking and entering."

*People v. Uhl*, 169 Mich. App. 217, 220; 425 N.W.2d 519, 521 (1988). However, it may "be

inferred from the nature, time, and place of [the] defendant's acts before and during the breaking

and entering." *Id.* Minimal circumstantial evidence is sufficient because it is difficult to prove a

defendant's state of mind. *Tucker*, No. 07-1408, slip op. at 7 (quoting *People v. Green*, 2008 WL

886201, at \*2 (Mich. App. Apr. 1, 2008) (citing *People v. Fetterley*, 229 Mich. App. 511, 518

(1998)).

> There was evidence in this case that
>
> [Petitioner] drove his vehicle up to the victim's house where he was neither known
> nor invited. The house was secluded from both the road and close neighbors.
> [Petitioner] rang the doorbell several times and walked around the property. He
> returned to the door and rang the bell again, and also began banging on the door.
> Despite not receiving any answer, the door opened and came crashing in. When
> the victim disclosed that she was home, [Petitioner] ran to his van and drove away
> quickly.

*Guilmette*, Mich. Ct. App. No. 224720, at 3. In addition, Mrs. McCormick testified that Petitioner

peered into her windows from outside the house. (Tr. Nov. 30, 1999, at 154-55.)

The evidence suggested that Petitioner intentionally selected a secluded house, "cased"

the house to determine whether anybody was at home, and then forced the door open after being

satisfied that no one was inside. The jury could have concluded from Petitioner's conduct that he

intended to steal something from the house because there was no other explanation for his

behavior.

In addition, the prosecutor introduced evidence that Petitioner committed a similar home

invasion in Oakland County a few months after the home invasion in this case. This evidence

was admitted to prove identity and a common plan, scheme, or system of doing an act. Both homes were located on large secluded lots in rural areas; both crimes occurred about noon on a weekday when people were likely to be at their jobs; and in both cases, Petitioner parked his van in the victim's driveway. In the Oakland County case he was carrying some items to his van when the homeowner saw him. Petitioner was apprehended by the police a short time later. The homeowner then identified some of her personal property in Petitioner's van. Petitioner's jury could have inferred from the similarity of the two crimes that Petitioner intended to commit a larceny in this case and would have stolen something had the homeowner not frightened him as he broke open the front door.

### 2. Summary

Evidence of the suspect's intent to steal was obvious from his conduct. Furthermore, arguing that Petitioner lacked the intent to steal anything would have contradicted his defense that he did not commit the crime and was elsewhere when it occurred. Even if defense counsel had made the argument that Petitioner had no reason to steal, there was evidence that the suspect fled from the house when Mrs. McCormick screamed in fright. "[F]light in a criminal case . . . can lead to an inference of guilt." *People v. Biegajski*, 122 Mich. App. 215, 220; 332 N.W.2d 413, 415 (1982).

For all these reasons, defense counsel's failure to challenge the prosecution's proofs on the element of intent to commit a larceny did not amount to deficient performance. Because trial counsel was not ineffective, appellate counsel was not ineffective for failing to raise the issue on appeal. "[B]y definition, appellate counsel cannot be ineffective for a failure to raise an issue that lacks merit." *Greer*, 264 F.3d at 676.

## V. Conclusion

The Court finds no merit in Petitioner's claim about the element of intent to commit a larceny and his attorneys' failure to raise that issue at trial and on appeal. The Court nevertheless believes that the trial court's decision on Petitioner's other claims about counsel was contrary to, or an unreasonable application of, *Strickland* and related Supreme Court decisions. Trial counsel was ineffective for not adequately investigating and comparing photographs of the footprints taken at the crime scene, for not eliciting testimony or making arguments about differences between the suspect's footprint and the threshold footprint, and for not challenging the prosecution's proofs on the element of entry into the McCormicks' home. Appellate counsel was ineffective for not raising the issue on appeal.

Accordingly, the application for a writ of habeas corpus is conditionally GRANTED. The State shall release Petitioner unless it grants him a new trial within ninety days of the date of this Opinion. The State also shall appoint counsel to represent Petitioner if he cannot retain counsel.

S/Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated: September 10, 2008

The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on September 10, 2008.

s/Carol A. Pinegar
Deputy Clerk